Case 16-2404, USA v. Jeffrey Cox, Oral Argument, 15 minutes per side. Mr. Graham for the appellant. Good morning, Your Honors. My name is Scott Graham on behalf of Jeff Cox, and with the Court's permission, I'd like to reserve three minutes for rebuttal. May it please the Court. We've raised seven issues on appeal, but I really want to focus on one issue, and that's the first issue in the case relating to the use of a closed-circuit TV system to present the testimony of two of the children who were involved in the case. It's our position that there are two fundamental flaws in what happened regarding the use of the closed-circuit system. The first is that the testimony of the expert witness presented by the government in support of the need for this system in order to protect the children was inadequate because he was not properly qualified and did not present testimony that established a need. And the second is that the district court did not make findings based upon objective evidence that made this necessary. Now, I would note that when the issue arose and a hearing was conducted pretrial, that the government's expert, Mr. Irwin, appeared. He was the only expert for either side. He testified that he was licensed in the state of Michigan to provide services, counseling services. He was other counselors, not geared toward trying to determine whether or not findings or testimony like he would give would be appropriate. Mr. Irwin said that he had testified 150 times. He had never testified on this issue, never. This was the first time. He essentially worked for a state court agency located in Jackson, Michigan, called Summit Point, where his counseling services and his testimony would relate to, generally, child protective services issues. And a very, very, in my opinion, a very different type of issue than we had here. Counselor, just to get me oriented, you're focused on the closed-circuit TV or testimony point, but you're not challenging Maryland v. Craig, I mean, I don't think. So it's not that you can't do it, it's how they did it? Your Honor, that's exactly right. It's how they did it. It's not whether they had a right to do it at all. My position is they had a right to do it, but they only had a right to do it if they did it in conformance with Section 3509, which, of course, followed. So let's say you're right about the evidence that he said he'd done this a lot and he hadn't done it at all. What's the prejudice? How did that prejudice things? Well, at some point, in order for the district court to even get to its own analysis, the way I read the statute and believe the statute needs to be interpreted, for the district court to even get to the analysis, there has to be some initial showing from an expert that there will be damage. And that expert showing needs to be based upon competent evidence. It needs to be based upon persuasive evidence. It needs to be based upon evidence presented by an expert who's qualified to offer this testimony. This particular expert had barely seen these children. He was very clear and very candid in talking about how heavy his caseload was and how difficult his caseload was and how they had a full day and how he had taken over for someone else and had seen the children. So is this like a doubt-bear point? That, in other words, he wasn't an expert? He was qualified? What I'm really getting to, is it an abuse of discretion standard, in terms of what the district court did? Well, I think that there's a component of that. But rather than dealing with the question of whether he should be allowed to offer any opinion whatsoever, I think my more specific argument that I made below and that I think I'm making here and I'm kind of pinned into here, is that, in fact, regardless of what he said, it was not persuasive in order to trigger further questioning under the statute. So your view is that until there's some kind of better evidence than you think was here from the expert, the judge couldn't even on his own query the children about how they would respond or what their feelings were? I think under the statute, I think there has to be some expert testimony. Now, certainly there question, Your Honor, is yes. The answer is yes. I'm sorry I didn't answer that simply. The answer is yes. There's got to be something more than what we have here, because the statute says there has to be something from an expert. Now, in this case, the way I read the record, I think there can only be one reading, and that is, Mr. Irwin took a categorical approach that children should not testify in front of the alleged, I use the term abuser because it doesn't matter whether it's in this case or a CPS case in state court or a divorce case or a custody case, that he took a categorical approach. And that's not what should happen or should have happened here. His primary finding was that these two children needed one particular thing in this case, and that was closure. They needed closure. Well, okay, if they're going to get closure, which they were going to get when trial occurred and a verdict ultimately was reached, they're going to get closure. They're going to get it whether they He was essentially there to protect the children in any way he could, and in fact did that by trying to keep them out of the courtroom during testimony. And that, again, is not the key issue. Just to make sure I'm getting Michigan law in this process, from what I know about the Confrontation Clause part of this, what I'm speculating and assuming, I'm curious what the Michigan procedure is designed to honor Maryland v. Craig. Because Maryland v. Craig doesn't just say, hey, you can just get up there and say this child is doing this by closed circuit because we think they should. You have to have expert testimony. And so I guess what I'm interested in is to the extent you have an expert that just automatically says this, it does seem to violate state law, but more fundamentally it would violate the Sixth Amendment. I agree with that. And on the state law question, which I can't answer definitively, I think that there's a different standard that applies in these civil proceedings. I think that the CPS proceedings and the other proceedings I've mentioned relating to custody, etc., are civil proceedings. I think we're dealing with a Confrontation Clause issue here and the use of it. Was it raised below to the trial judge that he said he'd done this 150 times, he'd never done it before? I believe that. What did the judge say about that when he was confined with it? He didn't say anything about it. He didn't say anything about it. He found that he was qualified and that he would accept his testimony for what value it had. When the district court moved on to talk with the children, the children certainly indicated that they were going to have some problems telling their story. That's not surprising in a situation like this. But the way I read the record, they never said that it would be more difficult to tell the story in the room that they happened to be sitting in when they were talking with the judge than in what they referred to as the small room, which everyone knew was going to be actually the jury room for a magistrate judge located on the same floor. The real question becomes, we know they're going to have difficulty, we know it's going to be hard, but what does the government need to show in order to establish that they can't do it in this courtroom in which the defendant is present? And there was, the way I read the record, no evidence showing that they couldn't do it. Perhaps they preferred not to be in that room, but that's not the standard. The standard is, would they be so traumatized that in fact it's unfair for them to have to attempt to give that testimony in the larger courtroom? Would they be so traumatized? And I don't see evidence in this record that they would be so traumatized that they couldn't attempt to tell the story. Now, I realize there's some danger here. If in fact an attempt is made to have them tell the story in the larger courtroom and they're obviously so upset that they can't go forward, that there's a bit of danger here. But that was danger that the defendant was willing to accept. Out of curiosity, I don't know how much work you do in this area, but so you have Maryland v. Craig, then you have Crawford, and the key descendant in Craig is Scalia, and the author of Crawford is Scalia, and the overall Roberts, it's 7-2, and it's hard to see those two cases as having the same analytical framework. But one thing I'm curious about is whether the literature about the psychiatry of this kind of a trauma and testifying, talking to police versus talking to a judge versus talking in front of the villain, what the literature says and how much it's changed in 25 years if it's changed at all. Do you know if there's anything out there? I'm sorry, Your Honor, I don't know. I don't know what changes, or don't know the state of it, what changes have been made. I do know that here, for example, if it had been clear that there was clear evidence of potential trauma, maybe that would have become, that type of issue would have become more relevant. But here, I don't think they ever got past the threshold. At least that's my position. But it's a clear error or abuse of discretion standard of review? Well, the findings of fact, I think, are reviewed under clear error. The ultimate evidentiary ruling, I think, because the nature of the ruling, I mean, it is a Sixth Amendment violation, and I think that that ultimate ruling is, there has to be a showing that the defendant was not harmed beyond a doubt. But the findings of fact, I think are reviewed for clear error. I see that my time is up, and thank you. Thank you, counsel. Good morning. May it please the Court. My name is Sean Lewis. I'm appearing on behalf of the United States in this case. I'd like to respond to the points that Mr. Graham raised, the first being his challenge to the qualifications of Mr. Irwin. First of all, I would point out that he's waived that argument. He did not challenge the qualifications of Mr. Irwin below. He did not challenge his qualifications in his lead brief. He didn't challenge his qualifications in his reply brief. The first we're hearing about the challenge to the qualifications is today at oral argument. That argument is waived. Beyond that, it just has no merit. There are no legs to that argument. Counsel suggests that Mr. Irwin falsely testified, that he had previously testified 150 times. That was true. I think where counsel is perhaps confused is that the first time Mr. Irwin had addressed this federal standard under 3509 was in this case, Cox's case. But he had testified in his capacity as a mental health professional. Were those prior cases though about the Sixth Amendment requirements? No, no. And he didn't hold... I mean, that's not important though. In terms of his qualifications, no it is not. The qualifications, when one looks at Craig and then one looks at the articulation of the necessary qualifications in Moses, those qualifications, what are important there is that the expert be a mental health professional, one. That two, he or she have particular training, knowledge or experience in the field of trauma. And Mr. Irwin in his work and in his testimony dealt on a daily basis with children who are traumatized by sexual under the relevant standard because he had specialized training. He had specialized experience with hundreds of children who had been traumatized by sexual abuse. Those are the relevant criteria. I know we're required to follow Craig, but wouldn't you agree there's a little tension between Crawford and Craig? I don't think there is because what we have in Craig is the procedural safeguards of cross-examination are still intact. There are layers... All you're missing is the confrontation part, the word in the Constitution. But there is, as Craig points out, there is still confrontation. It's just slightly tweaked, the format. Slightly? They're not looking... Eye to eye. The person they're accusing is not in the room. That's the whole point. Well, I think Craig parses that out and says that the whole point is that is certainly the ideal, but are there other procedural safeguards like cross-examination? Like under 3509, there being a two-way video conference. And then the additional layers of procedural safeguards, in this case, where even before testimony began, the children were informed. You can see Mr. Cox there. He can see you. The screen... Balance the value of the testimony versus the procedural safeguards? Is that the way you're thinking about it? Balancing the value of the testimony, it's a victim, truth, versus the procedural safeguards, i.e. this form of cross-examination. That's the way you're looking at it? I think, yes, under Craig, if I'm understanding the court correctly, under Craig, those are the two components. There has to still... No, and the reason I'm using the word balance is that's exactly the Roberts framework, which was overruled in Crawford. That was exactly the problem. The framers did the balancing, and they told us the best procedural safeguard was if you're going to testify against someone on a criminal trial, the person you're testifying against has to be there when you testify. Trauma, no trauma. Well, I think, one, Craig rightly balanced that. It remains good law. The Supreme Court didn't suggest in Crawford that they were in any way undermining Craig. But it does make you wonder why the government felt the need to do it here. I mean, what did he get, 240 years? Couldn't we have left a few of these charges on the side so you don't have this funny procedure? Well, I think that that really is a separate issue about whether or not this pattern of conduct that the defendant engaged in, whether there was accountability for it. Certainly, looking back with the benefit of hindsight, we can say the government presented a compelling case. The government got a sentence that is going to ensure that he cannot harm any more children. But we had a man who had preyed on children for years and years who had shown through his conduct he would not be stopped. And the government had to try to hold him accountable, present the evidence to the jury. We can see now, yes, we succeeded in holding him accountable. But there was no way at the time to know that. And proceeding with those charges, the government abided by the paradigm as established by the Supreme Court and established through the expert testimony the prerequisites under 3509 and Craig. If Judge Sutton is correct in his approach, is there a way to protect minors who would be traumatized? No. If I'm understanding the court correctly, if Craig is no longer good law, if 3509 is unconstitutional, and if children can no longer testify by closed circuit television, then no. That's not quite true. Instead of Maryland v. Craig protecting the children, the government would be in a position to protect the children because the government could be the ones to or we could examine what the psychological literature is and whether it's changed in 25 years. And I don't know what the literature says. I'm not an expert. But I won't say it's self-evident to me because I would think it's quite traumatic to talk to anybody about this. So there are two points there in terms of the last one, whether there's trauma involved in talking to anyone about these events. That is true. And Judge Yonker went through and he peeled back the layers. Counsel mentioned the closure layer, and Judge Yonker went through that and he stripped that away and said, okay, of course there's going to be some trauma related to the absence of closure. Let's strip that away. Is there still trauma here? Is there trauma that's just going to relate a result from talking about this sexual abuse? Yes, there is. Let's peel that away. Underneath those layers of trauma that are going to be inherent in any situation where a court looked under there and said, yes, there is still compelling evidence here that the trauma that is going to result, the significant level of trauma, is going to be from testifying in the courtroom, in the defendant's presence. And Judge Yonker was very careful and very thorough in making a record in this case to go through, work through those layers of trauma, get down to the heart, the knot of what 3509 and Craig is about, and make those very specific findings. And to go to Judge Sutton, your first point about whether or not there- I've always been baffled by with Craig and we're bound by it. I've just got time to kill, bound by the decision. This is what he wanted to argue about, so we'll talk about it. But I've been baffled by what seems to me a big assumption in the case. Yes, if you've been traumatized in this way and been victimized in this way, it would be very traumatic to testify in front of the villain if someone really did do this terrible thing. But that assumes the person's guilty. That's not how we're supposed to do this. Flip it that someone's lying. I'll bet you can get a lot of psychological experts to say it's very traumatic to lie in front of the person you're accusing of something they didn't do. I'll bet that's more traumatic. And I don't think the test distinguishes those. The test assumes the person did it. That's what the test does. So I don't know. I just can't- we know Scalia wrote one. We know he dissented in the other. I find the frameworks completely at odds with each other. This is a case where it would not have made a difference in my view. Merriman v. Craig came out the other way. There's enough here. I'd be shocked. It might not be a 240-year sentence, but I'd be shocked if this person would be in a position to attack anybody again. So I don't know. It's a head-scratcher, but it's above our pay grade. With that, if I could just hit a few of the points attacking whether or not Mr. Irwin's analysis was- I think counsel phrased it- it was not persuasive because he said Mr. Irwin had barely seen the children. I mean, that is simply not accurate. I set out in my brief the time that Mr. Irwin spent with the children. In fact, he had started counseling these children for the trauma-related sexual abuse wholly apart from any criminal proceeding or a civil proceeding. He was providing therapy, and it was only late in that process that he learned, oh, I'm going to have to testify, which I would submit actually bolsters his testimony. He wasn't there as just a hired gun to provide trial testimony. He was there as a clinician to help these children with that trauma. It's simply not accurate that he had barely seen or that he took a categorical approach. For instance, he, Mr. Irwin, also treated child two who did testify at trial, not with closed circuit. Mr. Irwin said, I think child two could testify in open court. In fact, he did. It's simply not accurate that Mr. Irwin took that categorical approach. In any event, Judge Yonker very carefully, again, peeled through those layers and said, even if in most of the cases that Mr. Irwin sees with badly traumatized children, does that eliminate or vitiate his specific findings with regard to these children based on the cluster of individualized factors facing them? And Judge Yonker found, no, it didn't. It didn't take away the children's fear. It didn't take away the nightmares. It didn't take away the threats. It didn't take away the difficulties they were suffering in school and at home. It didn't take away the weak family support systems, the cognitive delays that hold that cluster of factors that went into this analysis. So my final point, unless the court has further questions, is that counsel said there's simply no evidence that they couldn't testify in Mr. Cox's presence. And that is simply, again, inaccurate. I would just note page 2009 and 2015 in the transcript where Mr. Irwin opined very directly, those children, each one child one, could not, in his opinion, testify in the presence of the defendant. Crystal clear. Same thing at page 2015 with regard to child seven. So unless the court has further questions, I would ask that the judgment of the district court be affirmed. We do not. Thank you, counsel. Regarding the first point about how many times Mr. Irwin testified, I apologize if I was misstated things. I don't dispute at all that he had testified somewhere in some type of proceeding 150 times. So I'm sorry if I was not clear. My point was he had never testified on this particular issue. Did you raise that in the district court? Only in terms of the persuasiveness of his opinion, not in terms of his qualification to testify. Why? Well, because he certainly was seeing the children. He was seeing the children. There was no doubt about that. The question was what? I think I then may have misunderstood your complaint about him in the first place. I thought your complaint about him was not so much the he doesn't testify about exactly this kind of stuff. I thought your complaint was that he really didn't have the experience to testify about this kind of stuff. And it seems to me you're backing off of that. I'm sorry, Your Honor. I'm sorry. I'm not. I'm not backing off at all on that. He has seen children. He has seen different children. He's made certain findings about those children. He's made findings about whether or not they should go home, whether or not they should be with certain parents, whether or not they should live in certain circumstances. He's made findings about what treatment might be needed to help them. All of those things have nothing to do with the question of whether they will be. There's a substantial danger of trauma if they testify. So I'm not backing off that point at all. I apologize. I'm not backing off that at all. He simply was not and I think the record reflects the fact that when he goes back and talks about his experience about other courts, he can think of one occasion when a child was allowed to testify in front of the alleged perpetrator of bad acts. So anyway, he had testified, just never in this particular arena. So I guess the real question becomes what was presented to demonstrate that there was a substantial danger of trauma. And I think the record is very clear. Kids didn't want to testify. They didn't want to testify at all. They would have some problems. But why was it any different in the courtroom as opposed to in a different setting? And I don't think that was ever established and that's the basis for my argument and the basis for the claim of error in this regard. Thank you. Thank you, counsel. The case will be submitted. Clerk may call the next case.